## McCrea *versus* Longstreth.

A sale was made of hay and grain, part being cut but the grain not thrashed, and another portion in the ground, and also other personal property, the precise quantity of which was not known, but it was sold for a price agreed upon after an estimate made, the quantities not being " guarantied to be accurate;" and the amount of the price agreed upon was paid to the vendor. It was *held,* that each party having equal means of knowledge as to the quantity, and neither relying upon the estimate by the other, the price paid being less than the estimated amount, proof that the quantity sold fell short of the estimated quantity, was not evidence of *fraud* on the part of the seller; and that, in the absence of fraud or warranty, the purchaser could not recover back from the vendor a part of the price paid proportionate to the deficiency.

ERROR to the District Court, *Philadelphia.*

[McCrea *v.* Longstreth.]

This was an action by James A. McCrea *v.* William W. Longstreth, to recover back part of a sum of money paid for a large quantity of hay and other produce of a farm, and also other articles of property, which had been sold by McCrea to Longstreth.  Longstreth had lived on a farm which he subsequently sold to McCrea; and Longstreth also sold to McCrea grain and hay which had been harvested, and other hay and grain then growing.  The amount of the grain and hay not being known at the time of the sale, it was *estimated*, and it was stated in the receipt for the consideration-money, that the quantities were not guarantied to be accurate, but were sold for that sum, be the quantities more or less.  The amount of the estimate was $2080, but the property was sold for $1800.  In the first count of the declaration, a contract was alleged by which Longstreth, in consideration of *eighteen hundred dollars* paid to him by McCrea, agreed to deliver to plaintiff various kinds of property, viz., 100 tons of hay, 1200 bushels of corn, 150 bushels of rye, 150 bushels of wheat, and 700 bushels of oats, by means whereof he became bound to deliver the same, but has not delivered, although requested, to wit, 34 tons of hay, &c., setting forth the deficiencies.

Second count averring a like contract and obligation, averring non-performance generally.

3.  The common counts.

Pleas: *non assumpsit*.    Delivery according to the contract.  Payment, accord and satisfaction.

Joinder in issue and replication not accepted in satisfaction.

The plaintiff, as proof of the contract, gave in evidence an *estimate* of the property on the farm in Whitemarsh, sold to Dr. Jas. A. McCrea:—

One-half of the wheat in the ground, about 21 acres, the
    tenant to be at the expense of harvesting, &c.    .    $300
About    8 acres of rye,    .    .    .    .    .    .    75
      300 new rails,    .    .    .    .    .    .    20
      100 tons hay, half belongs to the tenant, who is to
        be at the expense of taking it to market,  .    800
      1200 bushels corn, one-half the tenant's,    .    .    360
    150    "    rye, $60; 150 wheat, $90; 700 oats, $140,
&c., in all amounting to $2080.

Received of Dr. James A. McCrea, eighteen hundred dollars, in full, for the personal property enumerated above, on the farm lately sold to him.  The estimated quantities are not guarantied to be accurate, but the articles are sold for the sum named, be the quantities more or less than estimated.

*Philadelphia*, 11 *Mo.* 30, 1848.    WM. W. LONGSTRETH.

To show the deficiencies in the quantities, and that there was mutual misapprehension, plaintiff's counsel read in evidence various letters between the parties.

[McCrea *v.* Longstreth.]

On the part of the plaintiff Joseph Neiman was called, who testified, that he had lived for seven years on the farm purchased by plaintiff, one year as the defendant's farmer, and six years he farmed it on the shares, defendant living on the place.   *   *   * He said, "I can't tell how much hay the place will produce."

The plaintiff's counsel then offered to show there was a deficiency in the amounts furnished, varying from 30 to 40 per cent. below the estimates of articles as furnished by plaintiff, to be followed up by evidence that the farm would not grow the amounts, and that the barn would not hold them, and that the defendant had lived on the place and farmed the property before the sale. But the judge rejected the offer, excepting so far as it went to show that the land would not produce the quantity contained in the estimates, and the plaintiff excepted.

The witness then proceeded:—Part of the barn was filled with corn-fodder; the hay was packed in the hay-house and barn; the hay-house was filled, and was estimated to contain 100 tons, but I have never hauled more than 70 or 80 tons from it; I hauled 70 or 80 tons from it this year, and 4 to 6 tons from the barn; we have never had the barn as full as this year; the hay crop of 1848 was an average crop; the year before we sold 50 tons; I saw Dr. McCrea before he bought the place; he was all over the premises; he never examined the capacity of the barn, that I saw, but I was not with him all the time.

The plaintiff then offered to show that there was a deficiency between the estimates of the crops and the actual quantities, as follows:—

| Hay, | . | . | . | 34 tons | out of | 100 | estimate. |
| Corn, | . | . | . | 527 bush. | " | 1200 | " |
| Rye, | . | . | . | 52 " | " | 150 | " |
| Wheat, | . | . | . | 61 " | " | 150 | " |
| Oats, | . | . | . | 40 " | " | 700 | " |

And claimed to go to the jury on the question of mistake in the bargain, or if that were denied, on the question of fraud in the defendant.

Whereupon the counsel for the defendant moved for a nonsuit, which the judge granted, and a nonsuit was entered accordingly.

Error was assigned to the rejection of evidence, &c.

*McMurtrie* and *Biddle* for plaintiff in error.—Representations of facts, if incorrect, either by fraud or mistake, entitle the party injured to an action, as for instance, affirmation of title implied in sale of chattels in possession: 1 *Lord Ray.* 593; 2 *Ib.* 1118; Dorsey *v.* Jackman, 1 *Ser & R.* 42; 3 *Barn. & Cress.* 623. Means of knowledge immaterial unless resorted to, for the party may rely on the truth of the assertions: 3 *Barn. & Cress.* 623; 9 *Mees. & Wels.* 54. The question of fraud or mutual mistake

should have been left to the jury. The *quo animo* was for them : 2 *Wheaton* 178 ; 3 *Rawle* 39.

*Price,* contrà.—The parties, by the language of the contract, intended to sell and buy an uncertain quantity for a round sum, and the estimate was made as a means of approximation. The sale was not according to the estimated quantity or price, which amounted to $2080, whilst the amount paid was but $1800.

Where the fact is equally unknown to both parties; or where each has equal and adequate means of information; or where the fact is doubtful from its own nature, and where the parties have acted with good faith, a court of equity will not interpose : 1 *Story's Eq.* section 150; 3 *Pa. Rep.* 447, Lighty *v.* Shorb; 10 *Barr* 74, Wolbert *v.* Lucas.

The opinion of the court was delivered February 2, 1852, by

LEWIS, J.—The plaintiff having bought the defendant's farm in Whitemarsh, afterwards, on the 30th November, 1848, purchased certain articles of personal property on the premises, including corn, hay, wheat, rye, and oats. We infer from the circumstances, and from what we see in the paper-book, that the corn was in the ear, the grain in the sheaf, unthrashed, and of course unmeasured, and that the hay had not been weighed. We also infer that the vendee, who had been " all over the farm," had seen the articles of personal property before he purchased them. At the time of the purchase, an estimate was made of the quantity of each article, and the price was carried out opposite the statement of quantity. The items were added together, and the aggregate was placed at the foot of the column, amounting to the sum of $2080. At the foot of this estimate, there was a receipt for the sum of " $1800, in full for the personal property enumerated above, on the farm lately sold." In the body of this receipt it was stated that the estimated quantities are not guarantied to be accurate, but the articles are sold for the sum named, " be the quantities more or less than estimated."

The farm, at the time of this transaction, was occupied by a tenant; the sale was not of the whole of the crops named, but of the landlord's share of them; and it was so stated in the paper to which the defendant's receipt was attached. The plaintiff moved to the farm in the following May.

The present action was brought to recover back a portion of the purchase-money which had been paid for the crops, upon the ground that the quantities had not proved equal to those stated in the estimate; and the plaintiff, on the trial, offered to prove a deficiency, " varying from thirty to forty per cent. below the estimates, to be followed with proof that the farm would not grow the amounts, and the barn would not hold them, and that the defend-

[McCrea *v.* Longstreth.]

ant had lived on the place and farmed the property before the sale." The court rejected the evidence, except so far as it went to show that the land would not produce the quantity contained' in the estimates.

The court also refused to permit the plaintiff to go to the jury on the question of fraud or mistake, and ordered judgment of non-suit against him.

Where there is any evidence tending to establish a material fact, it is certainly the duty of the court to submit it to the jury. But if the fact be not material to the issue, or there be no evidence to prove it, it would be a useless waste of time in the one case, and an inexcusable disregard of official duty in the other, to occupy the attention of the court and jury with its discussion and decision.

There was no offer to prove that the defendant had weighed the hay, or had measured the corn or grain, before he made the estimate of their respective quantities. Nor was there any evidence that the farm could not grow the quantities enumerated as on the premises. On the contrary, we infer from the transaction that the quantities were unknown to either party, and that the articles were open to the inspection of both, each having equal advantages in making the estimate, and neither having the power, by any means whatever, to arrive at anything like certainty with regard to the quantity of the wheat, rye, and oats, as measurement of grain in the straw is impossible. The hay, it is true, might have been weighed, and the corn might have been measured in the ear, and if there had been an offer to prove that the quantity had been thus ascertained, by the defendant, *before he made his estimate,* thus showing that he, *knowingly,* made a false representation in regard to it, the evidence would, without doubt, have been admitted, and would have been material testimony for the consideration of the jury on the question of fraud. But no such evidence was offered. And it is scarcely necessary to say that an error in an estimate of the quantity of hay in the barn or stack, grain unthrashed, and corn in the ear, where each party had equal means of knowledge, and neither relied upon the estimate of the other, ought not to be regarded as evidence of *fraud.*

In considering the question of *mistake,* it is material to bear in mind that the vendor does not stand upon an *executory* contract, seeking to recover damages in a court of law for non-performance, or asking the aid of a court of equity to enforce specific execution. The purchase-money has been paid and the property has been delivered by the vendor, and accepted and retained by the vendee. The contract has been completely executed, and the vendee is now asking to recover back a portion of the purchase-money, upon the ground of a mutual mistake in the estimate of the quantities. And he asks this although the evidence given by himself shows that he

[McCrea *v.* Longstreth.]

did not contract upon the basis of the defendant's estimate, but upon one of his own more favorable to his interest; and shows further that it was part of the express agreement of the parties that "the quantities were not guarantied to be accurate," and that the articles were finally sold for the sum of $1800 (being less than the sum claimed by the vendor in his estimate), "*be the quantities more, or less than estimated.*"

When it is considered that the business operations of our enterprising and trading community are regulated by the practical maxims of the common law, and that "*caveat emptor*" is the maxim which regulates the sales of lands and chattels, it is impossible to perceive how the plaintiff could hope to recover, in the absence of *fraud* and *warranty*. But where there is an express agreement that the objection, to which the evidence offered was applicable, shall not be taken, a recovery, in opposition to such agreement, would be a decision that men of admitted capacity to transact their own business shall not be permitted to do so. In the case before us it was impossible to ascertain the quantities of the grain in the straw at the time of the sale, and the parties were therefore under a necessity to sell upon an estimate, or not to sell at all. After a man conveys his farm, and is about to remove from the premises, perhaps to a place so distant as to render it exceedingly inconvenient to return in order to look after his crops, it is in most cases conducive to his interest to sell them. And it is generally greatly to the advantage of the purchaser of the farm to become the owner of the crops. Under such circumstances, where measurement is impossible, and weighing too expensive to be thought of, the parties ought certainly to be permitted to make their bargains upon an estimate of quantity. And having done so, with the articles before them, each exercising his judgment with equal means for forming an opinion, and both agreeing that an error in the estimate shall not be made the foundation of an action, the courts of justice have no right to disturb their arrangements in violation of their contract. After the whole contract has been fully executed by the parties, the expression adopted by YEATES, J., in Steinhauer *v.* Witman, 1 *Ser. & R.* 448, is peculiarly applicable, "the funeral has passed by; the dead cannot be resuscitated."

We are of opinion that there is no error in this record; and the judgment of the court below is therefore affirmed.

Judgment affirmed.